Samuel T. Chase, Appellant, v. W. Bramhall, Appellee.

Gen. No. 45,299.

Opinion filed April 9, 1951. Released for publication May 7, 1951.

RAYMOND L. JONES, LEO J. BARTOLINE, and BERT C. BENTLEY, of Chicago, for appellant.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, for appellee; JOHN C. SLADE, GEORGE B. CHRISTENSEN, DOUGLAS C. MOIR, and EDWARD J. WENDROW, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Originally, judgment was confessed upon three promissory notes executed by defendant. Defendant filed his petition to vacate the judgment, setting up the specific defense of the Statute of Limitations. Upon a hearing the court denied the petition and reduced the original amount of the judgment to $16,774.85, it appearing that a mistake had been made in computing the amount for which the original judgment was entered. Upon appeal from the order denying the petition, the judgment was reversed and the cause remanded (336 Ill. App. 156) because the petition prima facie set up a defense and, therefore, the judgment should be opened and defendant allowed to defend. Thereafter, upon a trial with a jury, a verdict for the defendant was returned and judgment thereon was entered. Plaintiff's motions for judgment notwithstanding the verdict and, in the alternative, for a new trial were denied, from which he now appeals.

.The salient facts are undisputed. The three notes upon which judgment was confessed are dated February 1, March 1, and April 1, 1933, respectively, and the respective maturities were May 1, June 1, and July 1, 1933. Suit was filed July 21, 1947.

The evidence discloses that plaintiff was general agent for the Connecticut Mutual Life Insurance Company and entered into a contract with defendant, dated February 26, 1923, employing defendant as agent for

172

plaintiff to solicit insurance. The contract provided for the payment of commissions upon policies procured by defendant as well as renewals thereof. This agreement further provided:

"The second party [Bramhall] hereby expressly authorizes the first party to charge against any commissions due under this Agreement to the second party, his executor or administrator, any indebtedness or liabilities of the second party to the first party."

A further agreement was entered into between the parties, dated November 3, 1932, which provided:

"I do hereby authorize and instruct you as General Agent, or The Connecticut Mutual Life Insurance Company, and any other General Agent or Insurance Company from whom I may be entitled to receive commissions, to pay said commissions directly to you, your heirs, executors, administrators, or assigns, until the amount due you, (as charged against me on your books, *and as evidenced by notes,* receipts or other evidence) shall be paid to you, your heirs, executors, administrators or assigns, together with interest thereon." (Italics ours.)

The last amendment of the agreement, dated May 27, 1937, relating to commissions, recited:

"Said agency agreement in all other respects is to remain in full force and effect."

The notes represented advances made by plaintiff to defendant against future commissions, and an account upon the books of plaintiff showed the three notes in question as part of the indebtedness of defendant, and was so recognized in the agreement of November 3, 1932. From time to time, as commissions due defendant were collected by plaintiff, they were credited against the debit balance shown in the account. Some of these debit items were for advances made after the date of the notes and, while a part of the account, were not evidenced by notes. Each month,

173

from 1932 until March 31, 1938, monthly statements were rendered the defendant, showing the debits and credits. Each of these statements was signed by defendant and contained the endorsement that he had examined the statement and found it correct. For some unexplained reason the monthly statements rendered to him after March 31, 1938, in the same form, were received and retained by him, without objection, but not signed by him. Typical of all of these statements, except for amount and dates, was the following form:

"Debit balance $11,772.76
"No interest accrued since February 1, 1933 included in above debit balance.

"I have this 30 day of April, 1938 examined the above statement and find it correct."

The principal contention raised by defendant is that the notes, having been merged in the account upon the books of plaintiff, must be treated with the rest of the items as an open account, and that plaintiff had no right to apply commissions within the ten-year period of the Statute of Limitations following the maturities of the notes as payment upon said notes, resulting in the claimed tolling of the statute.

 We regard the contention without merit for three compelling reasons: (1) the written agreement between the parties expressly authorized plaintiff to receive commissions due defendant and to credit them against any indebtedness of defendant, which necessarily included the notes in question; (2) the statement of account rendered each month to defendant in the form indicated, up to March 31, 1938, constituted an account stated, which carried with it the implied promise to pay; and (3) defendant testified that he knew that the three notes were included in the debit balance

when commissions were credited in his account. No case has been cited which has held that, under these circumstances, the notes lose their identity as such, because they were entered upon the books of the plaintiff as debit items in the running account with defendant.

■■ The rule to be deduced from the cases in this State, as well as elsewhere, is that an account stated is an acknowledgment of an existing condition of liability of the parties, from which the law implies a promise to pay the balance thus acknowledged to be due. *State v. Illinois Central R. Co.*, 246 Ill. 188; *Dean & Son v. W. B. Conkey Co.*, 180 Ill. App. 162; *King v. Kahn*, 157 Ill. App. 251. The Statute of Limitations is tolled by an implied promise to pay. *Edwards v. Harper*, 234 Ill. App. 296; *Walker v. Freeman*, 209 Ill. 17. In *Wackman v. Unschuld* (U. S. C. A. 7th Cir.), 172 F. (2d) 627, the law of Illinois upon this subject was reviewed, and it was held:

"The Illinois courts in construing the statute have held that a slight acknowledgment, if made before the statute runs, is sufficient to take the case out of the Statute, Chicago Chronicle Co. v. Franklin, 119 Ill. App. 384, and that no formal set of words is necessary to constitute an acknowledgment of a debt and a promise to pay it. A new promise in explicit terms is not required. To satisfy the statute, it is enough if the writing contains words from which a written promise may be inferred. Walker v. Freeman, 94 Ill. App. 357, 359. Any language of the debtor to the creditor clearly admitting the debt and showing an intention to pay the debt will take the case out of the Statute. Abdill v. Abdill, 292 Ill. 231, 126 N. E. 543. And if the debtor clearly admits the debt to be due and unpaid, and uses language expressing an intention to pay it, it is considered an implied promise sufficient to take the case

175

out of the Statute. Walker v. Freeman, 209 Ill. 17, 70 N. E. 595.

"A promise is implied from an unqualified admission that the debt is due and unpaid, accompanied by nothing said or done to rebut the presumption of a promise to pay it. Edwards v. Harper, 234 Ill. App. 296; Honn v. Pinnell, 61 Ill. App. 137; and Hurtt v. Steven, 333 Ill. App. 181, 77 N. E. 2d 204.''

Defendant relies upon *People v. Tallmadge*, 328 Ill. 210, 221, and *United States v. Kirkpatrick*, 9 Wheat. 720 (22 U. S.) 737, which announce the general rule:

"The general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice. . . . that payments ought to be applied to extinguish the debts according to the priority of time.''

█ The rule announced is not in conflict with plaintiff's position because, in the instant case, we have the written agreement with the plaintiff, giving him general authority to make the application of payments with no direction by the defendant to apply the payments to any specific item. Plaintiff, therefore, under the authority given, was at liberty to apply the payments as he did.

The Statute of Limitations was effectively tolled before bringing the present action, by the account stated, the written acknowledgment by the defendant on March 31, 1938, and the payments applied to the notes.

The trial court should have entered judgment notwithstanding the verdict, and we, therefore, enter judgment here in favor of plaintiff and against defendant for $17,582.32, representing the balance due on the notes with interest thereon.

*Judgment reversed and judgment here.*

Neimeyer, P. J. and Tuohy, J., concur.